## HARR *v.* FORDYCE.

### Opinion delivered November 23, 1908.

TRUSTS—WHEN TRUSTEES REMOVED.—Courts of equity have power to remove trustees, but this power will not be exercised for every mistake or neglect of duty, but for such only as endanger the trust property or show a want of honesty or capacity to execute their duties or of reasonable fidelity.

Appeal from Prairie Chancery Court; *John M. Elliott,* Chancellor; affirmed.

*J. H. Harrod* and *J. G. & C. B. Thweatt,* for appellant.

1. Equity prohibits a purchase by parties in position of trust of confidence. 20 Ark. 381. A trustee can not sell to himself, or for his own benefit. 23 *Id.* 622; 41 Ark. 264.

2. The trustee had no authority to sell the property as acreage; only by lots. He can not sell at great sacrifice. The powers of a trustee are strictly construed; no presumptions are indulged. 27 Ark. 122.

*Moore, Smith & Moore,* for appellee.

1. It is clear the trustee had power under the contract and deed to sell by acreage. 72 Ark. 630; 55 *Id.* 20; 52 *Id.* 65.

2. No fraud or dishonesty is shown. Mere mistakes of judgment by a trustee do not warrant a court of equity in inter-

fering.   2 Perry on Trusts, § 511; 1 *Id.* p. 350; 2 Pom. Eq. Jur. p. 1070; 44 N. J. Eq. 211.

3.   The trustee acted according to its best judgment, after due consideration.   82 N. Y. 65; 38 Mich. 582; 47 Ark. 254, 265.

BATTLE, J.   On the 19th day of August, 1905, S. L. Harr filed a complaint in equity in the chancery court of Prairie County against S. W. Fordyce and the Southwestern Improvement Association, alleging that on the 3d day of January, 1888, Richard Sutcliffe, being the owner in fee of the N. W. ¼, section 32, T. 1 S., R. 4 W., in Prairie County, Arkansas, entered into an agreement with the defendant Fordyce that Fordyce would cause the above described property to be platted in convenient shape for a town site with streets and alleys, and cause said plat to be filed in the proper office in the county, and that Fordyce would cause to be erected a suitable and proper depot at said place for business.   Sutcliffe agreed to execute and deliver to Fordyce, as trustee, a deed to all said property, so that Fordyce could make transfers of the lots.   It was expressly agreed that the conveyance was to be in trust, and that Fordyce and Sutcliffe were to be jointly interested in the transaction; Fordyce to hold the title for the benefit of Sutcliffe and his assigns.

"It was agreed that Fordyce, as trustee, was to take charge of the property and, through his agents, collect the money derived from the sale thereof, and, after paying the taxes, the net revenues were to be divided every twelve months—one-half to Sutcliffe and his heirs and assigns, and the other half to Fordyce and his heirs and assigns.   That Fordyce caused a portion of said land to be platted in April, 1889, same being spread upon the record upon the 29th of July, 1889.   The complaint makes the agreement and plat exhibits.

"On the 30th of May, 1888, Sutcliffe delivered to Fordyce a trust deed to said land.   The deed reciting it was made in pursuance of the agreement before mentioned.   On July 25, 1889, Sutcliffe conveyed to R. S. Giles all his title, claim and interest in said land, subject to the contract between Sutcliffe and Fordyce.   On the 20th of February, 1889, Giles and wife conveyed to Harr a one-fourth interest in said land, subject to the contract between Sutcliffe and Fordyce.   All the deeds were made exhibits to the complaint.

"On the 9th day of June, 1888, Fordyce, as trustee, conveyed to the Southwestern Improvement Association said tract of land, subject to the terms and conditions of the contract between Sutcliffe and Fordyce. The defendant has sold and collected for said lots over $2,000, and has not accounted to plaintiff for his interest therein. The complaint then gives a list of the lots sold by the defendants.

"The complaint then alleges that the defendants have sold fractional parts of said ground in acreage property in violation of the agreement. It then recites the instances of the sales of the acreage property. It is further alleged that for one or two years the defendants settled with the plaintiff for his part of the land, but that for fifteen or sixteen years no settlement has been made, although he had a one-fourth interest in the proceeds of the sales.

"The complaint closes with a prayer that the defendants be enjoined from selling any more of the lots; that a master be appointed to state the accounts between the parties, and that the remainder of the lots be sold by a commissioner; that the trust estate be administered, and the amount paid to plaintiff that was due him."

Both defendants answered.

On the 30th day of May, 1888, Richard Sutcliffe and his wife conveyed to S. W. Fordyce, trustee, the party of the second part, the northwest quarter of section 32, township 1 south, range 4 west, to have and to hold "and all and singular the rights, privileges, appurtenances, immunities and privileges thereunto belonging or in anywise appertaining to the said party of the second part, his heirs, successors and assigns, forever; giving and granting unto said party of the second part, his heirs, successors and assigns, the absolute right, power and authority to sell and dispose of the property hereinbefore conveyed as to him may seem best, without restraint or condition and without the necessity on the part of the purchaser to see to the application of the moneys realized therefrom except as the application thereof is regulated and controlled by said contract dated January 3, 1888, hereinbefore referred to as the consideration for this deed."

This conveyance was made and executed in pursuance of an agreement made and entered into on the third day of January,

1888, by Richard Sutcliffe and S. W. Fordyce. It is in part as follows:

"1. Said Fordyce is to hold said property as trustee for the benefit of said Richard Sutcliffe, his heirs and assigns, to the extent of one-half of the whole interest conveyed to him, and for the benefit of said Fordyce and his associates, their heirs and assigns, to the extent of the other half interest so conveyed.

"2. Said Fordyce is to cause the said property to be platted in convenient shape for a town, with streets and alleys, with a railroad reservation such as is suitable and proper for the convenient handling of the business of said railway at said point, and file in the proper office said plat for record, and do all the same at his own expense; and will also put in a siding and platform where the depot at such town is located as soon as said platting is done as practicable."

The various conveyances of the land specified in the complaint were executed as therein stated.

The court found that there was no equity in plaintiff's complaint, and decreed that upon the payment by defendant into the registry of the court of $820, admitted by defendant to be due complainant, the complaint would be dismissed for want of equity; and plaintiff appealed.

A part of the land conveyed to Fordyce in trust was sold by the trustee as acreage. Appellant insists that he was without authority to sell in this manner. But we think he was authorized to do so. The deed conveying the land to him gives and grants "to him, his heirs, successors and assigns, the absolute right, power and authority to sell and dispose of the property conveyed as to him may seem best, without restraint or condition;" and the agreement, pursuant to which the deed was executed, provides: "Said Fordyce is to cause the said property to be platted in convenient shape for a town, with streets and alleys, with a railroad reservation such as is suitable and proper for the convenient handling of the business of said railway at said point." There is nothing in the deed or agreement prohibiting the trustee from selling by acres, if it should be to the interest of those concerned to do so.

It is next insisted that the property was sold at a sacrifice, and that for that reason the trust should be closed. Upon this

subject this court in *Williams* v. *Nichols,* 47 Ark. 254, said: "It is well settled that courts of equity have power to remove trustees for neglect or breach of duty. It is not, however, every mistake or neglect of duty or inaccuracy of conduct of trustees which will induce courts of equity to adopt such a course, but the acts or omissions must be such as to endanger the trust property, or to show want of honesty or a want of proper capacity to execute the duties, or a want of reasonable fidelity. If a trustee fails in the discharge of his duties from an honest mistake or a mere misunderstanding of them, or from a misjudgment of them, it is not ground for removal unless such failure shows a want of proper capacity to execute the duties."

After a careful reading of the evidence in the case we find no want of honesty, fidelity, or capacity on the part of the trustee in the discharge of his duties; and that in the sales of property he has exercised a reasonable judgment, and that he should not be removed.

It would serve no useful purpose to examine separately each sale made and decide whether it is a good sale. That would needlessly consume much time and space. Hence we have given our conclusion, collectively, as to all.

Decree affirmed.