## CATHERINA v. PORTER.

### Opinion delivered May 13, 1918.

POWER COUPLED WITH INTEREST—AUTHORITY TO GIVE OPTION.—The mortgagor of land, subject to a first and second mortgage, defaulted on the first, entered into a contract with the second mortgagee, under which the mortgaged land was conveyed to a third party for the equal benefit of the contracting parties, both the contracting parties under the contract, to be allowed commissions for the sale of lots in the mortgaged property, the surplus remaining, after the payment of the first mortgage, commissions, etc., was to be divided equally between the parties to the contract. *Held,* that by the agreement the second mortgagee was given a power coupled with an interest, under which it might give a valid option on the whole property.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Coleman & Lewis* and *Wallace Townsend,* for appellants.

1.    The price paid was shockingly inadequate.    The evidence shows that the lots are worth twice the amount paid.

2.    The contract was not of sale but an option to purchase.    The power to sell real estate does not include

the power to option. 104 Ark. 459; Ann. Cases, 1914 C. 363, and cases cited in note to page 366.

3. The deed to Porter, though absolute in form, was only a mortgage. The debts were not satisfied. 88 Ark. 299, 301.

4. Their contract of August 26, 1913, did not constitute an agency coupled with an interest and was revocable. 31 Cyc. 1299, *et seq.;* 4 Ark. 251, 280-1; 11 *Id.* 58, 78-9; 8 Wheaton, 174. The Citizens Company has only an interest in the proceeds, not in the lots. There is no power coupled with an interest as shown by cases cited *supra.* The power is revocable, and Booher now asks and seeks the right to redeem to which he is clearly entitled.

*G. A. McConnell,* for Porter and the Citizens & Co., appellees.

1. Booher breached the contract of August 26, 1913, and can not maintain a suit for the alleged breach by the appellees. 105 Ark. 233.

2. The deed to Porter was a warranty deed in settlement of Booher's indebtedness to the bank and the title vested in Porter as trustee for the bank. *Snell* v. *White,* 132 Ark. 349; 106 Ark. 583. It extinguished the bank's debt. 129 N. Y. 223; 29 N. E. 297.

3. If the deed was not an absolute conveyance, then Porter held the land as trustee for Booher and the bank and the sale should be sustained. 3 L. R. A. (N. S.) 415, and note; 88 Ark. 192.

4. The deed to Porter and the contract created an agency coupled with an interest and the agency is irrevocable. 2 C. J. 530; 11 Ark. 706; *Ib.* 586; 16 *Id.* 296; 50 L. R. A. (N. S.) 634; 47 Ark. 515; 70 L. R. A. 135.

5. The price was adequate as the evidence shows.

*Rose, Hemingway, Cantrell, Loughborough & Miles,* for England Loan & Trust Co., appellee.

1. The price was adequate. Here a trust was created, and the legal title passed to Porter. 88 Ark. 192; 113 *Id.* 54; 52 *Id.* 65; 8 Wallace 202; 149 U. S. 248. The

deed to Porter is absolute. Lincoln bought in good faith and the purchase was consummated.

2. The deed is absolute and an adequate price paid in full. There is now no question of option. 104 Ark. 465.

### STATEMENT OF FACTS.

Ben Catherina and C. A. Booher brought a suit in equity against R. W. Porter, the Citizens Investment & Security Company, Fred A. Snodgress and C. K. Lincoln, the object of which was to have a deed from Booher to Porter declared a mortgage and also to cancel an option deed given by him to Snodgress for Lincoln.

On March 27, 1911, C. A. Booher borrowed $10,000 from the Valley Savings Bank and to secure it gave to the bank a deed of trust on 29 blocks, being 239 lots in Booher's Addition to the town of Levy in Pulaski County, Arkansas. The money was payable in five annual installments of $2,000 each. Booher paid the first note, but was unable to pay the second one which fell due in March, 1913. Under the terms of his loan, this default matured the balance of the debt. In the meantime in July, 1912, the Citizens Investment & Security Company (hereinafter called the Citizens Company) had taken a second mortgage on the property as security for a debt of $4,600 due it by Booher. This debt became due July 5, 1913. The first mortgage had been transferred to the Bank of Commerce and it was pressing Booher for payment and threatening to foreclose the mortgage. Booher had no money to pay either of the debts and owed the two banks an aggregate sum of $12,600. The Citizens Company paid the Bank of Commerce its debt of $8,000 and an agreement was entered into between it and Booher as follows:

"This agreement made and entered into at Little Rock, Ark., this 26th day of August, 1913, by and between Citizens Investment & Security Company, party of the first part, and C. A. Booher, party of the second part, witnesseth:

"That whereas, the party of the second part is the owner of the following described property in Booher's

Addition to Argenta, Arkansas, towit: (here follows a description of the property), and

"Whereas, the party of the second part owes the Valley Savings Bank Eight Thousand Dollars, secured by mortgage on above mentioned property, and,

"Whereas, the party of the second part owes to the Citizens Investment & Security Company, as agents, Forty-six hundred dollars, secured by mortgage on the above mentioned property.

"Now, therefore, the party of the second part, being desirous of disposing of the above mentioned property and paying off said indebtedness, agrees hereby to deed the said property to R. W. Porter, for the benefit of both the first and second parties equally upon the following conditions: The party of the first part shall have the exclusive sale of the property, being allowed a commission of 15 per cent. for making sales of property or parts thereof, and 5 per cent. for keeping records and making collections. The party of the second part shall be allowed a commission of 10 per cent. of the above mentioned commission on any property that he shall sell.

"The party of the first part is hereby authorized to sell the property for the price and sum of $200 per lot for the first three months after date hereof, but in case the party of the first part or his agents is unable to sell as many as twenty lots in this addition within the above mentioned three months, then the party of the first part shall have authority to reduce prices as they see fit, and should the party of the first part be offered as much as $150 a lot for as many as six lots to any one person (during the first three months) they shall have the authority to accept in blocks 13, 19, 21 and 25, and also the party of the first part is authorized to accept less than $200 each, for single lots in blocks 6, 11, 10, 7, 8 and the west half of block 5.

"The party of the first part shall have authority to sell the above mentioned lots on terms as follows: Ten Dollars cash, and five dollars per month on each lot with

———— per cent. interest, or on terms that are agreeable to the party of the first part.

"The moneys collected on account of sales in this addition are to be disbursed or disposed of as follows:

"First for the payment of commissions and collections, then for the payment of taxes, other expenses, including abstract, notary fees, advertising, etc., and also the principal notes above mentioned and the interest thereon, and the parties of the first part and of the second part shall share equally in the moneys, notes, or property which may be left after paying all of the above indebtedness and other expenses.

"It is also agreed that the party of the first part shall pay off or rather take up and carry the $2,000 of the $8,000 due to the Valley Savings Bank which amount is now due, but that the said party of the second part shall personally pay all interest due on said amount up to the date of this contract, and the party of the second part agrees to pay personally, the interest coupons which are now due to the Citizens Investment & Security Company, as agents, as interest on the $4,600 mortgage."

On the same day Booher and wife executed a deed to this property to R. W. Porter subject to the mortgage of $8,000 in favor of the Valley Savings Bank and the mortgage of $4,600 in favor of the Citizens Bank. The contract between the Citizens Company and Booher bears the following assignment signed by Booher:

"For value received, I hereby assign and set over to Ben Catherina all amounts coming to me or that may come to me by the terms of this contract, and I hereby authorize the Citizens Investment & Security Company to pay the same to said Ben Catherina as same accrues."

The Citizens Company took charge of the property in August, 1913, and at once directed itself to the sale of the property under the terms of the contract. It was only able to sell a sufficient number of lots from time to time to pay the interest and taxes. In 1915, Porter tried to sell the property for $14,000 but was unable to do so. He informed Booher of it and Booher made no objection.

During the summer of 1916, the Citizens Company began negotiations for the sale of the property to C. K. Lincoln for the price of $15,000. On the 8th day of May, 1917, Mr. Lincoln, through his agent, Fred A. Snodgress, took a sixty-day option on the property for the price of $15,000. There was at that time remaining unsold 177 lots. Lincoln paid the purchase price of the property and a deed was duly executed to him by Porter.

The evidence on the part of the defendants showed that $15,000 was a fair price for the property. On the other hand evidence was adduced by the plaintiffs tending to show that since the location of the cantonment at Little Rock, the price of real estate had enhanced in value and that the property was worth much more than $15,000 in May, 1917.

The chancellor found the issues in favor of the defendants and a decree was entered accordingly. To reverse that decree this appeal is prosecuted.

HART, J., (after stating the facts). Counsel for the plaintiffs rely on the case of *Swift* v. *Erwin,* 104 Ark. 459, where it was held that a power to sell real estate does not include the power to give an option to purchase it. They contend that the agreement between the Citizens Company and Booher is only a naked power to sell the property; and that it had no authority to give the option to Lincoln. Thus it will be seen the decision of this case turns upon the construction to be given to the contract entered into between Booher and the Citizens Company on the 26th of August, 1913. The rule governing the construction of such contracts is well settled. The only difficulty is in its application to a given state of facts.

In *Hunt* v. *Rousmanier,* 8 Wheat. (U. S.) 174, Chief Justice Marshall speaking for the court said: "We hold it to be clear that the interest which can protect a power after the death of the person who creates it must be an interest in the thing itself. In other words, the power must be engrafted on the estate in the thing. The words themselves would seem to import this meaning. A power

coupled with an interest is a power which accompanies or is connected with an interest. The power and the interest are united in the same person. But if we are to understand by the word 'interest' an interest in that which is to be produced by the exercise of the power, then they are never united. The power to produce the interest must be exercised, and by its exercise is extinguished. The power ceases when the interest commences, and therefore can not in accurate law language, be said to be 'coupled with it.' "

This decision is a leading case on the question and has been generally followed in the United States. The excerpt from it above was quoted with approval by this court in *Yeates et al.* v. *Pryor*, 11 Ark. 58.

Therefore, to impart validity to the option contract between the Citizens Company and Lincoln, the Citizens Company must have had the power to make it. In other words there must co-exist with the power to sell given to the Citizens Bank under the contract an interest in the property to be sold. The Citizens Company proceeded under the idea that the contract give it a power coupled with an interest.

On the other hand, it is contended by the plaintiffs that it is a case where property had been mortgaged for the security of money and the contract only gave the mortgagee the authority to sell the mortgaged property and reimburse itself.

The chancellor adopted the construction placed upon the contract by the defendants, and we think his decision was correct.

The nature of the power is to be determined from a consideration of the purposes and intent of the parties appearing from an examination of the entire instrument. The surrounding circumstances as shown by the instrument are that Booher owed the Valley Savings Company $8,000 secured by a mortgage on the property and owed the Citizens Company $4,600 secured by a second mortgage on the same property. He was unable to pay this indebtedness and the Citizens Company agreed to take

up and carry the amount due on the first mortgage. It was expressly agreed between the parties that Booher should convey the property to R. W. Porter for the benefit of both parties equally upon certain conditions. One of these was that the Citizens Company should have the exclusive sale of the property and be allowed a certain commission for making sales. It was also provided that Booher should be allowed a stated commission on any of the property that he might sell. The terms· of the sale were then provided for in the instrument. Then follows a section as to the disbursement of the proceeds. It first provides for the payment of commissions and taxes and then for the payment of the indebtedness to the Citizens Company. It then provided that both parties should share equally in what might be left. On the same day Booher executed a warranty deed to R. W. Porter as provided for in the written agreement. The legal title to the property became vested in the trustee with the power to sell and to convey and to divide the surplus equally between the parties. The instrument expressly stipulates that the conveyance to the trustee is made for the benefit of both parties. equally. The language of the instrument gave them a joint interest in the property. Another clause provides that each should be paid stated amounts for making sales. This excludes the idea that the division of the surplus was intended merely as a payment of a commission to the Citizens Company for making sales of the property. The power given by the instrument is not a mere naked power, but is a power coupled with an interest in the property itself. *Bonner* v. *Cross County Rice Co.*, 113 Ark. 54; *Harr* v. *Fordyce*, 88 Ark. 192; *Seymour* v. *Freer*, 8 Wall. (U. S.) 202, and *Shaeffer* v. *Blair*, 149 U. S. 248.

Of course the assignment by Booher to Catherina gave the latter no greater rights under the contract than were acquired by the former under its terms.

It follows that the decree must be affirmed.