SOUTHWESTERN BELL TELEPHONE COMPANY v.
KENNETH W. POINDEXTER

5-4706                                        433 S.W. 2d 833

Opinion Delivered November 18, 1968

*Donald K. King* and *Robert M. Sanderford* for appellant.

*Charles L. Honey* for appellee.

GEORGE ROSE SMITH, Justice.    In 1959 the appellant, Southwestern Bell Telephone Company, in the mistaken belief that it had a valid easement across the vacant 17-acre rural tract involved in this case, buried a long-distance telephone cable along the east edge of the property.    The cable was forty inches deep and about twelve feet inside the boundary line, which abutted a railroad right-of-way.

Six years later the appellee purchased the tract and, upon learning about the cable, demanded that Southwestern Bell remove it.    The telephone company brought this suit to enjoin Poindexter from damaging the cable. At the company's request the chancellor held the case in abeyance to permit Southwestern Bell to acquire a valid easement by condemnation.    The judgment in the condemnation case was for $375.    Thereafter the chancellor heard the present case upon Poindexter's counterclaim and awarded him $170 in actual damages and $1,000 in punitive damages.    Hence this appeal.

Bell's plea of the governing two-year statute of limitations is decisive.    Bell acquired its purported easement from E. J. Sprayberry on May 1, 1959, but Sprayberry had sold the tract to Ray O. Alley in the preceding March.    Bell, ignorant of the defect in its title, recorded its deed and laid the cable in 1959. Its occupancy was not questioned until soon after the appellee Poindexter bought the land from Alley's widow in 1965.

Even though Act 51 of 1951, which contains the two-year statute of limitations, is entitled, in §1, "Rural Telephone Cooperative Act," we cannot sustain the appellee's insistence that the act applies only to telephone cooperatives.    Ark. Stat. Ann., Title 77, Ch. 16 (Repl. 1957).    To the contrary, the act contains several provisions applicable to "telephone companies," which are defined in §2 to include persons, firms, and corporations, "other than a cooperative," that operate telephone systems within the state.    Southwestern Bell un-

questionably falls within the statutory definition of a telephone company.

For instance, § 4 (6) of the act authorizes cooperatives to interconnect with telephone companies. Section 32 (3) of the act required existing telephone companies to define their territorial limits in applying for certificates of convenience and necessity within 120 days after the passage of the act. Section 39 requires both telephone companies and cooperatives to construct their lines and facilities in compliance with the National Electric Safety Code.

The two-year statute of limitations is found in § 36, which by its express words applies both to private companies and to cooperatives. Here is its pertinent language: "No suit shall be brought against any telephone company or cooperative by the reason of the maintenance of telephone lines, poles, and fixtures, *on* [erroneously printed as "or" in the Annotated Statutes] any real property , . . . unless it is commenced within two years after the cause of action has accrued; . . . " Ark. Stat. Ann. § 77-1636. We consider the explicit language of the statute to be conclusive.

Alternatively, Poindexter argues that the buried cable was so concealed that it did not put him (or his predecessor in title) on notice. According to the proof, however, Bell has maintained from the beginning three separate posts, 16 feet high, at intervals along its supposed easement, supporting yellow signs, 18 by 24 inches, that bear this message: "Warning. Telephone Cable Buried In This Vicinity. Please Do Not Dig In This Vicinity Without Calling Telephone Number Enterprise 9800."

Poindexter seeks to escape the notice-giving force of those signs by his testimony that they were in an area "where you had to go through thick underbrush

and pine trees to find it." Even so, there are several flaws in his contention. First, he admits that he did not inspect the property before he bought it; so he would not have seen the notices even if the underbrush and pine trees had not been there. Second, a prospective purchaser of part of the tract did make an inspection, discovered the signs, and told Poindexter about the cable. Thus the only relevant proof that has been brought to our attention indicates that the signs would have been discovered by a diligent purchaser. Finally, the proof does not suggest, and we are not told, how Bell might better have given notice of its underground cable than by posting conspicuous signs at intervals along the easement itself. That the landowner permitted the land to become overgrown with underbrush cannot fairly be used to nullify Bell's effort to give notice of its occupancy of the easement.

The decree is reversed and the counterclaim dismissed.

BYRD, J., dissents.