2009 Ark. 152

**MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC., Appellant,**

v.

**SOUTHWEST HOMES OF ARKANSAS, INC., Appellee.**

No. 08–1299.

Supreme Court of Arkansas.

March 19, 2009.

Rehearing Denied April 23, 2009.

Keith, Miller, Butler, Schneider & Pawlik, PLLC, by: G. Nicholas Arnold, and R. Austin Oyler, Rogers, for appellant.

Stockland & Trantham, P.A., by: Thomas D. Stockland, Fayetteville, for appellee.

JIM HANNAH, Chief Justice.

Mortgage Electronic Registration System, Inc. ("MERS") appeals a decision of the Benton County Circuit Court denying its motion to set aside a decree of foreclosure and to dismiss the foreclosure action.[1] MERS alleges that the circuit court erred in ordering foreclosure because as the holder of legal title it was a necessary party that was never served. We affirm the circuit court and hold that under the recorded deed of trust in this case, James C. East, as trustee under the deed of trust, held legal title. Because MERS was at most the mere agent of the lender Pulaski Mortgage Company, Inc., it held no property interest and was not a necessary party. As this case presents an issue of first impression, our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(b)(1).

This case arises from foreclosure on a 2006 mortgage granted in a one-acre lot. A prior deed of trust also encumbered the property. In 2003, Jason Paul Lindsey and Julie Ann Lindsey entered into a deed of trust on a one-acre lot in Benton County to secure a promissory note. The lender on that deed of trust was Pulaski Mortgage, the trustee was James C. East, and the borrowers were the Lindseys. MERS was listed on the deed of trust as the "Beneficiary" acting "solely as nominee for Lender," and "Lender's successors and assigns." The second page of the deed of trust states that "the Borrower understands and agrees that MERS holds only legal title to the interests granted by the Borrower and further that MERS as nominee of the Lender has the right to exercise all rights of the Lender including foreclosure." The deed of trust was recorded.

In 2006, the Lindseys granted the subject mortgage on the same property to Southwest Homes of Arkansas, Inc. to secure a second promissory note. This mortgage was recorded. On February 9, 2007, Southwest Homes filed a Petition for Foreclosure in Rem against the Lindseys under the 2006 mortgage. The Lindseys, the Benton County Tax Collector, and "Mortgage Electronic Registration System, Inc. (Pulaski Mortgage Company)" were listed as respondents. Pulaski Mortgage was served; however, MERS was never served. Pulaski Mortgage did not file an answer.[2] A Decree of Foreclosure in Rem was entered on April 4, 2007, and the property was auctioned to Southwest. An Order Approving and Confirming Commissioner's Sale was entered on May 8, 2007. In February 2008, MERS learned of the foreclosure and moved for relief, arguing it was a necessary party to the foreclosure action. The circuit court denied the motion, and this appeal followed.

MERS asserts that it held legal title to the property and, therefore, it was a necessary party to any action regarding title to the property. The deed of trust indicates that MERS holds legal title and is

---

1. Mortgage Electronic Registration System, Inc.'s (MERS) motion was entitled Motion to Set Aside Default Judgment; however, the circuit court found, and the parties agree, that MERS was never served. Because MERS was never served, it could not have failed to respond to that service and suffer a default judgment. The relief sought was that the decree of foreclosure be set aside and the foreclosure action be dismissed.

2. Pulaski Mortgage was the lender of record. No assignment of the deed of trust was recorded nor had Pulaski Mortgage's security interest been satisfied of record.

the beneficiary, as well as the nominee of the lender. It further purports by contractual agreement with the borrower to grant MERS the power to "exercise any and all rights" of the lender, including the right of foreclosure. However the deed of trust provides that all payments are to be made to the lender, that the lender makes decisions on late payments, and that all rights to foreclosure are held by the lender.

No payments on the underlying debt were ever made to MERS. MERS did not service the loan in any way. It did not oversee payments, delinquency of payments, or administration of the loan in any way. Instead, MERS asserts to be a corporation providing electronic tracking of ownership interests in residential real property security instruments. *See In re MERSCORP, Inc. v. Romaine*, 8 N.Y.3d 90, 828 N.Y.S.2d 266, 861 N.E.2d 81 (2006). According to MERS, it was developed by the "real estate finance industry" and was designed to facilitate the sale and resale of instruments in "the secondary mortgage market, which include one of the government sponsored entities."

■ MERS contracts with lenders to track security instruments in return for an annual fee. *MERSCORP, supra.* Those who contract with MERS are referred to by MERS as "MERS members." According to MERS, MERS members contractually agree to appoint MERS as their common agent for all security instruments

registered with MERS.[3] MERS asserts that it holds the authority to exercise the rights of the lender, and for that purpose, it holds bare legal title. Thus, it is alleged that a principal-agent relationship existed between MERS and Pulaski Mortgage under the contract terms of the deed of trust.[4]

"An agent is a person who, by agreement with another called the principal, acts for the principal and is subject to his control." *Taylor v. Gill*, 326 Ark. 1040, 1044, 934 S.W.2d 919, 922 (1996) (quoting AMI 3d 701 (1989)). Thus, MERS, by the terms of the deed of trust, and its own stated purposes, was the lender's agent, including not only Pulaski Mortgage but also any successors and assigns.

■ MERS asserts authority to act, arguing that once it becomes the agent on a security instrument, it remains so for every MERS member lender who acquires ownership. This authority is alleged to arise from the contractual relationship between MERS and MERS members. Thus, MERS argues it may act to preserve the rights of the lender regardless of who the lender may be under the MERS electronic registration. We specifically reject the notion that MERS may act on its own, independent of the direction of the specific lender who holds the repayment interest in the security instrument at the time MERS purports to act. "[A]n agent is authorized to do, and to do only, what it

---

3. The Kansas Court of Appeals, in *Landmark National Bank v. Kesler*, 40 Kan.App.2d 325, 192 P.3d 177 (2008), likewise found that Mortgage Electronic Registration System, Inc. acts as an agent. We note the analysis in this case is consistent with our own but also note that the Kansas Supreme Court granted review of the *Landmark* case.

4. MERS is listed as a nominee on the deed of trust. A nominee is "a person designated to act on behalf of another, usu. in a very limited

way." *Black's Law Dictionary* 1076 (8th ed. 2004). A nominee is also a "person who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others." *Id.* As discussed above, MERS was not designated to act on behalf of another under the facts of this case. Further, it held no title in this case where title vested in the trustee, and finally, it received and distributed no funds for the benefit of others.

is reasonable for him to infer that the principal desires him to do in the light of the principal's manifestation and the facts as he knows or should know them at the time he acts." *Hot Stuff, Inc. v. Kinko's Graphic Corp.*, 50 Ark.App. 56, 59, 901 S.W.2d 854, 856 (1995) (quoting Restatement (Second) of Agency § 33 (1958)). Nothing in the record shows that MERS had authority to act. Here, Pulaski Mortgage was the lender and MERS's principal. Pulaski Mortgage was a named party in the foreclosure action. Thus, MERS was not acting as the lender's agent at the time it moved to set aside the decree of foreclosure.

However, MERS also argues that it holds a property interest through holding legal title. Specifically, it purports to hold legal title with respect to the rights conveyed by the borrower to the lender. We disagree.

"A deed of trust is 'a deed conveying title to real property to a trustee as security until the grantor repays a loan.' " *First United Bank v. Phase II, Edgewater Addition*, 347 Ark. 879, 894, 69 S.W.3d 33, 44 (2002) (quoting *Black's Law Dictionary* 773 (7th ed. 1999)); *see also House v. Long*, 244 Ark. 718, 426 S.W.2d 814 (1968). The encumbrance created by the deed of trust may be described as a lien. *See, e.g., First Am. Nat'l Bank of Nashville v. Booth*, 270 Ark. 702, 606 S.W.2d 70 (1980).

Under a deed of trust, the borrower conveys legal title in the property by a deed of trust to the trustee. *Phase II, supra.* "In this state, the naked legal title to real property included in a mortgage passes to the mortgagee, or to the trustee in a deed of trust, to make the security available for the payment of the debt." *Harris v. Collins*, 202 Ark. 445, 447, 150 S.W.2d 749, 750 (1941). The trustee is limited in use of the title to passing title back to the grantor/borrower in the case of payment, or to the lender in the event of foreclosure. *See Forman v. Holloway*, 122 Ark. 341, 183 S.W. 763 (1916). The lender holds the indebtedness and is the beneficiary of the deed of trust. *House, supra.* A trustee under a deed of trust is not a true trustee. *Heritage Oaks Partners v. First Am. Title Ins. Co.*, 155 Cal.App.4th 339, 66 Cal.Rptr.3d 510 (2007). Under a deed of trust, the trustee's duties are limited to (1) upon default undertaking foreclosure and (2) upon satisfaction of the debt to reconvey the deed of trust. *Id.*

In the present case, all the required parties to a deed of trust under Arkansas law are present, the borrower in the Lindseys, the lender in Pulaski Mortgage, and the trustee in James C. East. Under a deed of trust in Arkansas, title is conveyed to the trustee. *Harris, supra.* MERS is not the trustee. Here, the deed of trust renamed James C. East as the trustee. The deed of trust did not convey title to MERS. Further, MERS is not the beneficiary, even though it is so designated in the deed of trust. Pulaski Mortgage, as the lender on the deed of trust, was the beneficiary. It receives the payments on the debt.

The cases cited by MERS only confirm that MERS could not obtain legal title under the deed of trust. MERS relies on *Hannah v. Carrington*, 18 Ark. 85 (1856); however, that case stands for the proposition that a deed of trust vests legal title in the trustee. We are also cited to *Shinn v. Kitchens*, 208 Ark. 321, 326, 186 S.W.2d 168, 171 (1945), where this court stated that "[t]he trustee named in the deeds of trust was a necessary party at the institution of the foreclosure suit, as also, of course, was Kitchens, the holder of the indebtedness." East, as trustee, was a necessary party. MERS was not. Finally, we are cited to *Beloate v. New England*

*Securities Co.,* 165 Ark. 571, 575, 265 S.W. 83 (1924), where this court stated that the real owner of the debt, as well as the trustee in the mortgage, are necessary parties in the action to recover the debt and foreclose the mortgage. Again, this case supports the conclusion that East was a necessary party and MERS was not.

Further, under Arkansas foreclosure law, a deed of trust is defined as "a deed conveying real property in trust to secure the performance of an obligation of the grantor or any other person named in the deed to a beneficiary and conferring upon the trustee a power of sale for breach of an obligation of the grantor contained in the deed of trust." Ark.Code Ann. § 18–50–101(2) (Repl.2003). Thus, under the statutes, and under the common law noted above, a deed of trust grants to the trustee the powers MERS purports to hold. Those powers were held by East as trustee. Those powers were not conveyed to MERS.

MERS holds no authority to act as an agent and holds no property interest in the mortgaged land. It is not a necessary party. In this dispute over foreclosure on the subject real property under the mortgage and the deed of trust, complete relief may be granted whether or not MERS is a party. MERS has no interest to protect. It simply was not a necessary party. *See* Ark. R. Civ. P. 19(a). MERS's role in this transaction casts no light on the contractual issues on appeal in this case. *See, e.g., Wilmans v. Sears, Roebuck & Co.,* 355 Ark. 668, 144 S.W.3d 245 (2004).

Finally, we note that Arkansas is a recording state. Notice of transactions in real property is provided by recording. *See* Ark.Code Ann. § 14–15–404 (Supp. 2007). Southwest is entitled to rely upon what is filed of record. In the present case, MERS was at best the agent of the lender. The only recorded document provides notice that Pulaski Mortgage is the lender and, therefore, MERS's principal. MERS asserts Pulaski Mortgage is not its principal. Yet no other lender recorded its interest as an assignee of Pulaski Mortgage. Permitting an agent, such as MERS purports to be to step in and act without a recorded lender directing its action would wreak havoc on notice in this state.

Affirmed.

IMBER, DANIELSON and WILLS, JJ., concur.

PAUL DANIELSON, Justice, concurring.

I concur that the circuit court's order should be affirmed, but write solely because I view the decisive issue to be whether MERS was, pursuant to Arkansas Rule of Civil Procedure 19(a) (2008), a necessary party to the foreclosure action. It can generally be said that "[n]ecessary parties to a foreclosure action are parties whose interest are inseparable such that a court would be unable to determine the rights of one party without affecting the rights of another." 59A C.J.S. *Mortgages* § 708 (2008). *See also* 55 Am. Jur. 2d *Mortgages* § 647 (2008) ("[A]ll persons who are beneficially interested, either in the estate mortgaged or the demand secured, are proper or necessary parties to a suit to foreclose."). Moreover, "[p]ersons having no interest are neither necessary nor proper parties, and the mere fact that they were parties to transactions out of which the mortgage arose does not give them such an interest as to make them necessary parties to an action to foreclose the mortgage." *Id.* Indeed, our rules of civil procedure contemplate the same.

Rule 19(a) of the Arkansas Rules of Civil Procedure speaks to necessary parties:

(a) *Persons to Be Joined if Feasible.* A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or, (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter, impair or impede his ability to protect that interest, or, (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his claimed interest. If he has not been joined, the court shall order that he be made a party. If he should join as a plaintiff, but refuses to do so, he may be made a defendant; or, in a proper case, an involuntary plaintiff.

Ark. R. Civ. P. 19(a) (2008).

Here, a review of the deed of trust for the subject property reveals four parties to the deed: (1) Jason Paul Lindsey and Julie Ann Lindsey, "Borrower"; (2) James C. East, "Trustee"; (3) MERS, "(solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns)"; and (4) Pulaski Mortgage Company, "Lender." The question, then, is whether MERS, as nominee, was a necessary party that had an interest "so situated that the disposition of the action in [its] absence may" have impaired its ability to protect its interest or left a subsequent purchaser or other subject to a substantial risk by reason of its interest. The answer is no; MERS, as nominee, was not a necessary party to the foreclosure action, because it held no such interest.

Initially, I must note that my review of the deed's notice provision reveals that the deed clearly contemplated the Lender as the party with interest, in that it provided:

13. Notices. . . . Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as in this paragraph.

Here, as stated in the circuit court's order of foreclosure, Pulaski Mortgage, as Lender, was served with notice of the foreclosure action, in accord with paragraph thirteen.

But, in addition, MERS claims that because it holds legal title, it has an interest so as to render it a necessary party pursuant to Rule 19(a). Indeed, pursuant to the deed of trust, MERS held "only legal title to the interests granted" by the Lindseys,

but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns) has the right to exercise any and all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

"Legal title" is defined as "[a] title that evidences apparent ownership but *does not necessarily signify* full and complete title or *a beneficial interest*." *Black's Law Dictionary* 1523 (8th ed. 2004) (emphasis added). Thus, as evidenced by the definition, holding legal title alone in no way demonstrates the interest required by Rule 19(a).

MERS further claims that its status as nominee is evidence of its interest in the property, making it a necessary party. However, merely serving as nominee was recently held by one court to be insufficient to demonstrate an interest rising to the level to be a necessary party. In

*Landmark National Bank v. Kesler,* 40 Kan.App.2d 325, 192 P.3d 177 (2008), *review granted,* (Feb. 11, 2009), MERS also asserted that it was a necessary party to the foreclosure suit at issue. There, the district court found that MERS was not a necessary party, and the appellate court affirmed. Just as here, MERS was a party to the mortgage "solely as nominee for Lender." 40 Kan.App.2d at 327, 192 P.3d at 179. Based on that status, the Kansas court found that MERS was in essence, an agent for the lender, as its right to act to enforce the mortgage was strictly limited. *See id.*

Agreeing with MERS that a foreclosure judgment could be set aside for failure to join a "contingently necessary party," the Kansas court observed that a party was "contingently necessary" under K.S.A. 60–219 if "the party claims an interest in the property at issue and the party is so situated that resolution of the lawsuit without that party may 'as a practical matter substantially impair or impede [its] ability to protect that interest.'" *Id.* at 328, 192 P.3d at 180 (quoting K.S.A. 60–219). Notably, the language of K.S.A. 60–219 quoted by the Kansas court is practically identical to the language of Ark. R. Civ. P. 19(a).

The Kansas appellate court noted that MERS received no funds and that the mortgage required the borrower to pay his monthly payments to the lender. *See id.* It also observed, just as in the case at hand, that the notice provisions of the mortgage "did not list ₁₂MERS as an entity to contact upon default or foreclosure." *Id.* at 330, 192 P.3d at 181. After declaring that MERS did not have a "sort of substantial rights and interests" that had been found in a prior decision and noting that "a party with no beneficial interest is outside the realm of necessary parties," the Kansas court concluded that "the failure to name and serve MERS as a defen-

dant in a foreclosure action in which the lender of record has been served" was not such a fatal defect that the foreclosure judgment should be set aside. *Id.* at 331, 192 P.3d at 181–82.

It is my opinion that the same holds true in the instant case. Here, Pulaski Mortgage, the lender for whom MERS served as nominee, was served in the foreclosure action. But, further, neither MERS's holding of legal title, nor its status as nominee, demonstrates any interest that would have rendered it a necessary party pursuant to Ark. R. Civ. P. 19(a). For these reasons, I concur that the circuit court's order should be affirmed.

IMBER and WILLS, JJ., join.